The final case for argument this morning is 24-1774, OPM v. Moulton. Mr. Beckridge, good morning. Good morning, Your Honors, and may it please the Court, Kyle Beckridge on behalf of OPM. The Court should reverse the decision of the MSPB because under basic rules of statutory interpretation, Section 8421C requires OPM to apportion an annuity supplement Are you suggesting there's no ambiguity and it's a clear-up, only one way to construe it? That is what we're suggesting when the statutory scheme is considered as a whole. So in light of the directive in Section 8467, that payments under this chapter be subject to the express How long did OPM have its prior interpretation? So I want to sort of clear up that point. Can you answer the question? Sure. So I think, I mean, how it came up was for, I think, approximately 30 years. Had that prior interpretation ever been challenged in court? The prior interpretation? No, I don't The one you're advocating against today. I don't believe that it had, but I do want to be clear. I don't think it was an interpretation. I think there was an operational error. And I think we can see that by looking at the regulations. Because the regulations are consistent with the position that we are advocating for today. So there was an operational error that was taking place. I think what the OPM analysts found was that there was inconsistent application of the rules. I'm completely dumb. Did you refer to this? Because I couldn't find anything in your brief which talked about the historic application of this provision. So is what you're telling us now somewhere in your brief? I think we addressed in our brief that in 2016, OPM started issuing reconsideration decisions because it realized that there was this, again, operational Where is all that information in the record? The decision making and so on? With respect to the reconsideration decision? What I'm getting at is the clerk of the board ordered OPM to submit certain documents to the board. What were those documents? With regard to what, your honor? The process that was undergone to make the change, as I recall. So I believe that the reconsideration decisions can be found in the record at APPX appendix page 61, for example. This is between OPM and Mr. Melton, I thought. OPM's internal instructions. Here's what the board says. OPM's internal instructions, which OPM chose not to submit into the record, even after being ordered to do so by the acting clerk of the board. You say those are in the record? Oh, sorry. I thought you were asking for the reconsideration decision. I'm not aware of those being specifically in the record, though. Again, I would point the court to the regulations, which I think OPM's regulations are entirely consistent with the position that we're advocating for. Why weren't those submitted into the record? The OPM's instructions to its analysts with respect to... I'm not sure, your honor. Does the OPM have a policy of not following orders from the board? No, your honor. Okay. Let me ask you about the divorce decree. Your basic position seems to me to be that OPM is faced with this terrible conundrum where a divorce decree isn't cleared on what's to be done. And so you've established a bright line. But if the parties to a divorce are unhappy with the results later on, if they say there are changed circumstances, isn't it normal practice that they can simply go into the district court that ordered the decree, and which, in my understanding, always retains jurisdiction? You know, child goes to Harvard and they need more money or whatever. Why can't it be resolved that way rather than with your hard and fast rule? Well, your honor, I think that's exactly right. So I think a couple of responses to that. First, I don't think that the former spouse would necessarily be in a position to know that the former employee, the now retired annuitant, is receiving this annuity supplement. So I think that's part of it, is there's an information problem. But the other point I would make is that if once the annuity, if a former employer retires early, they get the annuity supplement and that annuity supplement is divided and they're unhappy, I think that your honor's solution would likewise apply to that situation where if they're saying, hey, more is being divided here than I think should have been, then they could also go back to the state. So I don't understand. You said there's an information problem. So how does it work? Does OPM keep track of every annuity payment in the system? And when they see there's a supplemental annuity, they contact a spouse to see if they have a divorce decree and what the impact is? I mean, you say it's a vacuum of information, but how does it get done? What is OPM doing? So OPM responds whenever, for example, a former spouse submits a divorce decree. Right. So OPM then looks at that divorce decree, performs a ministerial role of saying, does that divorce decree contain the express language apportioning? Okay, I get that. What does that have to do? I'm talking about supplemental annuities. Right, right. So if under the MSPB's interpretation, the supplement annuity supplement is not expressly divided, then OPM cannot divide it, right? Okay. So what were you doing before 2016 and what are you doing now? So before 2016, again, there was this operational error where if the divorce decree did not expressly mention the annuity supplement, then it would not be divided. And you're calling that an operational error? How many times was that operational error committed? I'm not sure the exact number. I think there were something like 70 appeals of the reconsideration decision, so at least 70. Okay, so tell me what's happening after 2016. Now if, like in Mr. Moulton's case where the divorce order says that the former employee's gross annuity is to be divided, OPM is following the direction of Section 8421C and is applying that division both to the basic annuity and to the annuity supplement. Well, under your interpretation of the statutory provisions that are issued, they have to be treated the same, right? Correct. Okay, so let's assume I have a divorce decree, and because of the circumstances we've decided the basic annuity, everybody's just keeping their own annuity. But with respect to the supplemental, because I happen to know my ex-spouse is an air traffic controller or a firefighter, I get 80% of that. So I get nothing, 0% of the basic annuity, or it's a 50-50 split, and 80%. So you've got two inconsistent splits here. So does that mean they're both null and void because they don't satisfy the regulation that you're constructing of the regulation? So what happens to those splits? Do you pick one number out of the air or another and say, well, we're going to treat them all together? Do you average it out? What do you do with splits? No, so under 8421C, you would have to treat the annuity supplement in the same way that the basic annuity. Even though the parties have negotiated for good reason, I mean, maybe I gave up a beach house so that I could get 75% of my firefighter husband's earlier annuity, supplemental annuity, but OPM comes along and says, no, you're not getting the 75% that you negotiated for explicitly in the divorce decree. We're going to apply the different split that you, for other reasons, negotiated your two basic annuities under. Really? Has OPM ever been in the business of rewriting divorce decrees? No, Your Honor, but OPM does have to follow the statutory mandate, and I would just say, though, if that— And they never did that before 2016, so they were in violation of following the statutory mandate for however many years before 2016, and now the statutory mandate requires that OPM swoop in and rewrite divorce settlements. You appreciate that there's a lot of give and take in these divorce settlements. Even they could be explicit as to both, but they may come up with different percentages because that's what they want. That's what they agreed to. And OPM says, no, those are null and void. So tell me again, which one do you pick? How do you decide which one you pick? It's the basic—it would be the basic annuity under Section 8421C. The only— Okay, so you are rewriting my ability to get 75% of the supplemental annuity because we reasonably, I think in a lot of divorce decrees, both parties have a similar or comparable basic annuity so that maybe it's 50-50 split of everything. Maybe they just say everybody keeps their own. So that necessarily dictates—you're rewriting a divorce agreement? I think—I wouldn't frame it that way, Your Honor. I would say that OPM is following, again, Congress's mandate that they be treated the same way. But you would agree that there's another interpretation. You think yours is the better, but there's another interpretation which would obviate the need for the federal government to get involved in rewriting divorce decrees 30 years after the fact, right? There's another way to interpret the statute. There is, but I do not think there's another way of interpreting the statute that doesn't impose a superfluidity problem. Okay, so you do. And doing that for 20 years beforehand was just a mistake, so that didn't impose that. Where in the congressional record is the report that OPM made to Congress that it had been an error for the past 30 years? I'm not aware of that being in the record, Your Honor. So isn't there a problem with kind of notice to the folks? I mean, I've had a few survivor annuity cases, so I'm generally familiar with this thing about how the divorce decree has to be explicit with respect to annuity. But people know that, right? I mean, does OPA tell people that? Or people are just assumed to have read the statute and know that if you get a divorce decree and you want to split up the annuity, you've got to explicitly do it in the divorce decree? Well, that's the rule under either. I understand. I'm just wondering how people are aware of the rule when they get divorced. Yeah, I mean, I think it's in the statute. It's also in OPM's regulations, Your Honor. Okay. The state court sure looks like it followed the CFR form when it drafted the decree. It uses the same language from the form, except it says employees gross monthly annuity. What does that mean? So the gross monthly annuity, Your Honor, well, one, again, it's referring to the employee annuity, which under the regulations, there's any recurring payment made to an annuitant. So that is both the annuity supplement and the basic annuity. But then the gross amount, I believe, is the full amount of the annuity less payments for the survivor benefit annuity. So that's specifically what the gross amount is referring to versus a net amount or self-only amount. Can I ask you about retroactivity? Your time is running out, but let me be quick on it. What happened to Mr. Holton at first when they came to him and started reducing his annuity? They were getting back pay for all the earlier years. And then what happened? So OPM made the decision to waive the overpayment from 2010 to 2016. So OPM had to pay his former spouse what she would do under the statute, so the apportionment of the annuity supplement, which meant that Mr. Moulton was overpaid by that equivalent amount, but OPM elected to waive that overpayment amount. So it's coming out of the U.S. Treasury and not out of Mr. Moulton's annuity, the back pay amount? OPM is compensating? Essentially for the period of 2010 to 2016, both Mr. Moulton and his former spouse received the benefit of the annuity supplement. Is that the point at which he was deceased? Is that the point? The former spouse was deceased? Correct. Is that the point at which she was deceased? No, it was after. She passed away, I believe, in late 2023. Okay. So what's the status? Is her estate a party to this action? It is not, and I see I'm out of time. No, please, we're asking questions. No, so the estate is not a party to the action, and Mr. Moulton has now reached age 62, so he's no longer receiving the annuity supplement either. So the relevant time period in terms of his pay would be from 2016 until the end of 2023 when Ms. Moulton passed away, because after that point he was receiving the full annuity supplement again. Do you have any reason to doubt the accuracy of the examples given in the amicus brief? No, I don't have any reason to doubt that, but I would just say that every time that an amount is paid to a former employee, that's an amount not being paid to the former spouse. I think that's an important point. But OPM is compensating, so is this just a one-off, or if you think you initially thought this should apply retroactively and that's why you started recouping the money from 2020 to 2016, but apparently somebody made a decision. Was that a decision made for everyone, or was that just based on the facts of this case? There has not been that decision made for everyone, Your Honor. There has not been a decision with that regard made at all. Well, if you say, and this is your footnote too, you say OPM determined that he was not at fault and that it would be against equity and good conscience, so why wouldn't that be applicable to any person that was similarly situated? So that may turn out to be the case, but what OPM decided is that it was going to wait for basically this case to be resolved before making the decision because, again, OPM did make the payments to the former spouses, and so there's either going to be an overpayment to the former spouses or an overpayment to the annuitants, and OPM said we're going to wait until we have a decision so that we know which party was overpaid, and then it will make a decision as to whether or not the overpayments should be waived or not. Have those Doge folks at OPM looked at you? No, Your Honor. So there could be other circumstances that would differ enough so that the OPM— I mean, what is the authority for OPM? Where is the pocket of money? I mean, OPM has the authority. Is this true in other circumstances? Is it because you concede that you're the ones that messed up and that you were responsible for not coming to Mr. Moulton soon enough so that, in fairness, you're going to eat the difference? This is government taxpayer funds we're talking about. There's got to be some basis for allocating those funds for a certain purpose.  I think that was largely the case, that what OPM determined is that the overpayment was not a result of any wrongdoing on the part of Mr. Moulton, and under the statute, I believe it's 5 U.S.C. section 8470, OPM does have the authority to waive overpayment in those circumstances. Okay, and so if hypothetically we were to affirm the MSPB in this case, then there would be no need for an overpayment because we would be saying that the OPM's construction, or what you say error for 30 years, was not in fact an error. That's correct, except that in that situation, Ms. Moulton would have been overpaid. Because, again, OPM did pay the former spouses. Spouses in plural? Are there other cases around where we've done the same thing that you did with Mr. Moulton's case? Again, Your Honor, that's what I was referring to, the, I think, 70 appeals of reconsideration decisions where this sort of same fact pattern occurred. So you paid it out, there's no holding? Are there cases being held pending the outcome of this appeal? There are. There are. So you've done some, but you've held some? Sorry, what I'm saying by that is that there have not been overpayment, whether or not the overpayment will be waived, that decision has not been made, and that decision is pending this appeal. But the reconsideration decisions have been made, and those, again, those reconsideration decisions have said that the former spouse should be getting paid under section 8421C. If there are other persons who have not, or are not among those 70, whose annuities have been treated as wrongfully paid to them and are being recollected, and they haven't appealed, are you going to pay them back if we determine that what you did was erroneous? I don't think that situation exists, Your Honor. I think everybody who has received a reconsideration decision, OPM said we are not going to mess with overpayment until we know, until we have an answer on the statutory construction question. I have one more question. You've got a couple of questions.  And if you've already answered this, I apologize. I think Judge Wallach started to get into this. Somebody figured something out in 2016. Where's the paper trail for that? I mean, somebody, you have memos in the file, a record of somebody saying, hey, we messed up. Hey, we're not doing this right. Hey, for all the policy reasons that you mentioned in your brief, we should change course. What's the paper trail for this change in 2016? So I think Your Honor could look to the OIG report. I think that gets into it a little bit. Yeah, where is that? I was just looking for that in the appendix. Is it 80? It is. They talk about the history, but I thought you were distancing yourself from the history they outlined, which is simply that you had interpreted the statute one way for 30 years. That's right. I am distancing myself from that. Well, do you have something in the record that shows us some other reason for having done it? I mean, you're right. I mean, all I could find in the record was this OIG report. Well, there's got to be, we're in a bureaucracy. I worked for one for 15 years. There's got to be a paper trail, right? The OIG does a report. OPM disagrees with it, and nothing is said publicly or in email traffic or in putting out memos. I don't think we have that in the record before us. My understanding is that there were discussions internally about how this was supposed to apply, and then that came to the realization that it was not being applied consistently. Well, is there anything back in 2016 that OPM, or before 2016, that indicates that OPM had the same view that you're espousing today as to what the statute says, and therefore it was just a misapplication or an error that occurred in 30 years prior to 2016? I think the best evidence of that would be the regulations, Your Honor. That OPM's regulations are consistent with the view of the statute that we're advocating for today, and the regulations haven't changed. What was the basis for OPM ignoring the IG report? Ignoring it? No, I shouldn't say that. Rejecting the IG report. Again, because OPM, in its view, did not change its interpretation. Its interpretation is reflected in the regulations, and so this wasn't a new interpretation. This was just applying the law correctly, and unfortunately there was this error before. It was an unfortunate mistake. In the case of Mr. Moulton, that's why OPM made the waiver of overpayment decision. That's an interesting approach. We haven't changed our position, so we don't need notice and comment is basically what you're saying. I think that's right. The regulations have stayed the same, and the regulations are clear that an annuity supplement is a part of the employee annuity, which can be divided. Okay. So did I hear you correctly earlier saying that the phrase termed gross monthly annuity in Mr. Moulton's divorce decree necessarily encompasses both a gross annuity supplement, or do you think it only is directed to a basic annuity? I think it's sufficient that it only encompasses the basic annuity, but gross annuity I think does encompass what the regulations define as employee annuity, which is recurring payments to an annuitant, and the annuity supplement is one of those recurring payments. So then it would be OPM's read that this term in the divorce decree refers to both then? It is expressly providing for the division of both Mr. Moulton's basic annuity and his annuity supplement? I think I see the point of your honest questions. We're not contending that it says annuity supplement, of course. It doesn't say annuity supplement, but it says something else, gross monthly annuity, so I'm trying to understand OPM's view of that term. Right. Because it's not expressly saying basic annuity, nor is it expressly saying annuity supplement, so is it referring to just one of them, or is it referring to both of them? I think it's referring to the employee annuity, which under the regulations would encompass both of them. Okay. My second question is, putting aside your technical reading of 8421C, I just want to know OPM's view as to why it thinks Congress would choose to treat annuity supplements differently, in that they don't need to be expressly provided for, that somehow annuity supplements will just rise or fall based on how basic annuities get expressly provided for in a divorce decree. Why would Congress do that? It seems a little strange that it would select this form of payment and treat it differently from all the other payments under Chapter 84. Well, a couple of responses, Your Honor. First, we know that Congress has chosen to do that, because with respect to CIA employees, there are rules, and Congress was, I think, particularly explicit there that the apportionment of the first special annuity with respect to CIA or the former spouses of CIA employees shall extend to the annuity supplement. Yeah, but that does not cut against you. Congress knows how to say what Judge Chen is suggesting, well, how are we dividing this from what Congress thought. Congress has shown us that they know exactly when they want something to happen, how they would say it, and they'd be able to do it in this context. So I think Congress was explaining how the first special annuity applies to the annuity supplement. In 8421C, Congress was explaining how the annuity supplement relates to the basic annuity. So, yes, different language is used, but I think it's a slightly different context. But my point is that Congress hasn't, at least in that situation, right, Congress was not hesitant to tie the annuity supplement to the basic annuity in a way that Your Honor suggested. Why would they do that? Well, we know that they're willing to do that, because we see it there. And the second point I'd make is that, again, although it disproportionately affects people like air traffic controllers or law enforcement officers, it's not just those employees that can retire early. If you meet the time and service and age requirements, I think any federal employee would have the option to retire early. And so by including the annuity supplement within the basic annuity, which is, again, the annuity supplement is under the subchapter under basic annuity that Congress enacted, Congress is offering protections to former  They don't have any idea that their former federal employee spouse is going to retire early and obtain an annuity supplement. And so treating the FERS annuity as one sort of annuity for the purpose, one employee annuity for the purposes of court division would make sense and offer protection to former spouses. Well, except that it cuts both ways, because if former spouses know that there may be an annuity, they may include that in the divorce decree. And that may cut against them if we're nullifying their getting a large chunk of that special annuity, if with respect to the basic annuity, they were going to get a much smaller chunk. So you're saying we ignore what they were able to negotiate as their fair share of the supplemental annuity. Doesn't that cut against at least those spouses in the bucket I'm articulating? I think it would, Your Honor. I mean, candidly, I'm not sure how big of a bucket that actually I'm not sure how big your bucket is either. Do you have any idea how big your bucket is? I don't, Your Honor. I know that my bucket is the one in this, is Mr. Moulton's case, though. Yeah, but going back to sort of the predicate of Judge Chen's question, how would we divine that Congress would think if Congress knew what it was doing in directing its attention, so it would pick an advantage to people in one bucket, the presumption being they had no idea this was going to happen, but we're going to arguably penalize significantly a portion of annuity spouses in the other bucket. Do you think Congress thought that through? Well, Your Honor, I think we would fall back on our statutory construction argument that Congress must have intended that by Section 8421C if that section is going to have any meaning because, again, Section 8467 does all of the work that the MSPB assigns to Section 8421C. And so I hear the concern, but I don't think that concern can be squared with the statutory language. Judge Chen, sorry I interrupted you. Don? I have one more. Thank you, Your Honor. Your... Oh, I'm sorry. Are you familiar with 5 CFR.838 subpart F, appendix A? That's the form that state courts can look to or to which they can look. And it appears to be the form upon which the Colorado court based the language in its decree, but the discussion in the form itself doesn't seem to have anything about supplemental benefits. So how do you deal with that? Your Honor, I don't have the form in front of me, but I think we deal with that. Again, that would be consistent with what we're articulating, that whenever the basic annuity is apportioned, that is capturing the annuity supplement as well. So there wouldn't be a need for the annuity supplement to be... But there's a lot of detailed discussion about other things. You better take a look at it. I'll do that, Your Honor. If I may, could you provide...  5 CFR 838, subpart F, appendix A. Recommended language for court orders dividing employee annuities. Thank you, Your Honor. Yeah, sure. Mr. Mann, good morning. Good morning.  May it please the Court. I believe Your Honors refer to this as a conundrum, and I believe the best way out is through the text. And we believe that we have the better reading of Section 8421 and that that reading requires that a court order expressly divide the supplemental annuity. That is so because 8421 directs that the supplemental annuity shall be treated in the same way as the main annuity for purposes of Section 8467. That language I just quoted, for purposes of 8467, provides critical context that directs OPM to apply 8467's procedural requirements. And 8467, in turn, requires an express division. Nevertheless, if this Court believes the statute can be fairly read either way, several background principles conclusively show that our reading is better. For a first, domestic relations issues such as this one are preeminently questions of state law, as Your Honors recognize, and Congress rarely seeks to displace state law on these issues. OPM's interpretation is... Do you agree with OPM that you could strike 8421C from the statute and the entire statutory scheme would operate in the exact same way that you want it to operate with 8421C? It might literally provide the same function, Your Honor, but 8421C provides critical clarifying effect, and the Supreme Court has held in numerous cases... I guess I'm wondering, why does it provide clarity when 8467 straight up says, Payments under this chapter. And annuity supplements are, in fact, payments under this chapter, just like basic annuities are payments under this chapter. They are, Your Honor, but annuity supplements are... It's very clear from the record, and no one disputes this, are meant to replace Social Security payments, and Social Security payments, by law, are not assignable and are not divisible. So by making clear, expressly clear, that annuity supplements for purposes of 8467 are like basic annuities, then Congress is clarifying what type of thing the annuity supplement is, and it is, in fact, the type of thing that can be divided pursuant to court order. Are you familiar with the CFR section I formed? I've read it, Your Honor. What's your take on the whole thing? The judge clearly went through it. Yes. I think, as Your Honor recognizes, that section does not refer anywhere to the supplemental annuity. I don't believe any portion of Part 838 refers to the supplemental annuity. My understanding... But there's lots of other language. Correct, Your Honor. And my understanding is that the gross annuity, in fact, does not refer to the supplemental annuity, and I think this can be seen from OPM's own treatment of the issue and, in fact, its own language. If you look at, I believe it is, Appendix 80, there is a letter from OPM to Mr. Moulton that describes his supplemental annuity to him. And in describing the supplemental annuity to Mr. Moulton, again, this is at the top of page Appendix 80, it says that the supplement is an amount paid in addition to your monthly gross annuity benefit. That language, I think, clearly shows that OPM, when Mr. Moulton was retiring, understood that the gross annuity and his annuity supplement were two different things. That's a good point. Are you aware of any court decisions where courts have basically forgiven redundancy in a statute and said, well, we'll still choose to interpret a particular provision in a particular way, even though it makes it redundant, because, on the whole, it makes more sense to do that? Yeah, of course, Your Honor. One is the Supreme Court's recent decision in Bufkin, which it affirmed a decision of this Court, and that had to do with appeals from the Veterans Court. And there was a provision that Congress specifically added to the statute in that case saying you need to take due care of the presumption in favor of veterans. And the Court, with respect to that language, I'll just, with the Court's indulgence, I'll quote from the Supreme Court. Section 7261B1 makes explicit the Veterans Court's previously implicit duty to review the VA's application of the benefit of the doubt rule, pursuant to the standards set forth in subsection A. Of course, this duty predated Congress's enactment of section 7261B1. Subsection A always required the Veterans Court to review all relevant findings of fact and conclusions of law, including the benefit of the doubt determinations. So the Court has, in fact, said that sometimes redundant readings are, in fact, the best reading of the statute. And redundancy and expansive provisions like this, Congress is no stranger to redundancy. And if your Honor is interested, other provisions in 8442 include further redundancies. We pointed to F6, which describes the survivor annuity supplement, and there Congress provided that, you know... Yes. But in 8442F6, Congress provided that the survivor annuity supplement will be adjusted under 8462 and otherwise treated under this chapter in the same way as an amount payable under subsection A. But by its very terms, section 8462 already applies to this provision. And so Congress is no stranger to using redundancy in this particular statute. For those of us who previously worked on the Hill, we find that impossible to believe. So is there... Are you aware of a paper trail in 2016 or anything that existed before 2016? I mean, your friend described it. I forget the word he used. Operational error, I think. Are you aware of what the history is? I know we've got the OIG report, which gives some information. I am not, Your Honor. I am only familiar with what's contained in the record, which is essentially the Inspector General's report and not much else with regards to the history. The D.C. District Court went the other way, right? It did, Your Honor. I understand it's vacated, but that's a federal court that ruled in favor of the OPM's interpretation. I think the primary basis that the District Court relied on there was the fact that the supplemental annuity section was within the relevant subchapter of the basic annuity, but I think that is sparse. Congress is no stranger to redundancy. Congress... They redundant it up all the time. Yeah, and the, I think, headings under which statutes fall is not dispositive as to what their meaning is, and, of course, nothing else in the statute indicates that the supplemental annuity is part of the basic annuity. In fact, many provisions in the statute contemplate just the opposite, but they are two separate things. And do you have any more insight into the retroactivity or non-retroactivity? I mean, you yourself in your brief recognized that your client has been reimbursed for the retroactive application of this. Is that correct? It depends how Your Honor understands retroactive. Okay. So he was forgiven the payments that he was given from 2010 to 2016 that were given to him and that OPM contends should have been paid to his former spouse. However, starting in 2016, it did begin dividing the supplemental annuity, which under the statute we believe should have gone fully to Mr. Moulton, began dividing that annuity in 2016. And so in 2016 through 2024, I believe, it paid a portion of Mr. Moulton's annuity to his former spouse. He is not... That money is not his, and that is the money that we are seeking in this appeal that the board ordered the OPM award to Mr. Moulton. If the court has no further questions, I'll yield to Mr. Moulton. Do you know if they continued paying any money to an estate? I don't know. I know that the death of Mr. Moulton's former spouse occurred very closely in time to when he turned 62, so the amount of money that would have been paid to an estate would have been slight. Ms. Moulton and the estate were parties to the board proceeding below, or intervenors in the proceeding below, and neither Ms. Moulton nor her estate disputed Mr. Moulton's take of events and disputed that he should have received the full supplement. Thank you.  Good morning, Your Honor. Good afternoon. I'm Deanna Schaubacher. I represent MSPB. I agree with everything that counsel firm Mr. Moulton has expressed to you. MSPB's reading is clearly the correct reading under the statutory language. It is not the correct reading    Section 8421C says that the annuity supplement shall be treated the same way as the basic annuity. So how is the basic annuity treated? It's divided as expressly provided for by a court order and subject to the procedural rules and the definitions set forth in 8467. So an annuity supplement should be also treated that way, divided pursuant to if expressly provided for by a court order, subject to the procedural rules and the definitions. OPM's interpretation requires us to kind of skip those steps, just go look at the court order, see how the basic annuity is divided, and then divide it the same way. That's not the statutory language. And as Your Honors have recognized, OPM's interpretation needlessly infringes significantly on the authorities of state courts to divide assets in a divorce proceeding. And as you recognize, Your Honor, that's a careful negotiation, and this is taking away their authority to divide assets as part of that negotiation. Let's assume the divorce decree only provided for a split, 50-50, 70-25, of the supplemental annuity and was silent with respect to any other annuity. What's your understanding of would OPM let that one go or would they say, even though the regular annuity isn't mentioned, we've got to do something with that, too? I think that under OPM's interpretation, they would not be able to honor that court order at all because the basic annuity is not divided. It's 0% paid to the former spouse, so they would also have to divide 0% of the supplemental annuity. So I think that's a great example of a way that it's rendering all of 84-67 inoperable as to the annuity supplement. Similarly, pursuant to OPM's interpretation, the parties could never exclude the annuity supplement from consideration. Even if they used express terms, that's what they want. We don't want this to be part of the agreement. OPM would necessarily divide it pursuant to this erroneous interpretation. And OPM relies heavily on their regulations, but as the board acknowledged, nothing in the regulations mentions an annuity supplement. The Federal Register of Notices didn't mention an annuity supplement, and the IG report says that for 30 years they presumed it was non-allocable, just like the Social Security benefit that it's standing in for. So I don't think that we can look to what the regulations say and say, oh, look, the annuity supplement fits under this broad term of annuity. OPM did not contemplate that annuity supplements were part of a basic annuity at that time, so to retroactively plug it into the regulations I don't think works. I know the board has an enormous backlog for many other reasons other than this, but do you happen to know if there are pending cases that are being held? Yes, Your Honor, we have quite a few cases that are on hold pending this decision. I believe it's over 100 at this point. But don't quote me on that. Somewhere between 50 and 150. But yes, this is a significant issue. OPM revised their approach in 2016, and everyone that had been affected would have received an adjustment to their annuity. Do you think 8467 by its terms is even slightly ambiguous as to whether on its own terms it would encompass annuity supplements? Or would you concede that it's clear on its face that of course just that provision covers any and all payments under Chapter 84? I think it covers any and all payments under Chapter 84 unless accepted elsewhere. So therefore, technically, 8421C is not really doing anything extra. It's not doing maybe anything extra, but as Mr. Moulton's counsel mentioned, it's a critical clarifying purpose. Would you say OPM's interpretation of 8421C is at least reasonable and plausible? I don't personally think so, because as I discussed earlier, I think it gets... Treated in the same way is, for purposes of this case, a little bit vague. It could mean what they say it means, but what the MSPB concluded also obviously is a reasonable way to think of it. I think that treated the same way as the basic annuity under 8467 requires the board's interpretation. They're interpreting it as treated the same way as in the court order. But of course, it's a tricky language. Obviously, it's created a lot of confusion. So it could be that they're both reasonable readings, but the board's reading is significantly better for this. It doesn't permit this impermissible intrusion into the state court matters. It gives more meaning to all of 8467, where OPM's interpretation would render it completely inoperable as to the annuity supplement. Well, there's already plenty of intrusion from the Code of Federal Regulations, if it's just guidance, but it appears to be followed in Colorado. Yes, but to the extent that Congress has expressly permitted that intrusion, and Your Honor, I am aware of the appendix you mentioned with the language. And it did require them to use the term gross annuity, as you noted. Well, no. They tried to follow it. No, it has other phrases, but. It could be net or self-only. But none of those have anything to do with including or excluding a supplement. What fascinates me about that is the language discussing military pensions and other things and the silence. Yes. Yes, I agree. There's extensive regulations that have been promulgated by OPM on providing guidance to the courts, to the state courts. Like, you have to use this particular language if you want to award a survivor annuity. But you're right, completely silent as to the supplement. Thank you. OK, thank you. We ask that you affirm. We'll restore two minutes of rebuttal, if you need it. I'll just address a couple of points on rebuttal. And so I looked at the appendix, and I agree that a supplemental or annuity supplement, that term is not found in there. And I would just kind of go back to my earlier point, though, that that would be expected in the sense that the basic annuity, whether that's in terms of gross annuity, self-only, or net annuity, is referring to the employee annuity, which already covers the annuity supplement. So there would not be, under OPM's interpretations, under its regulation, there wouldn't be the need to specifically address it. Yeah, although, as your friend noted, and as I was alluding to, there's plenty of other specific discussion on other circumstances. I agree, Your Honor, which I think, again, shows that the annuity supplement doesn't specifically have to be expressed under the regulations. The only other point I want to address is this idea that 8421C is offering a clarifying rule. And what is clarifying is that the rules from 8467 apply to the annuity supplement. And I think that if that was Congress's intent, was simply to clarify that Section 8467 applies to the annuity supplement, then Congress chose a very odd way of stating that. I mean, Congress could have just stated that an amount under this section is a payment under Chapter 84 for the purposes of Section 8467, or could have simply stated that Section 8467 applies to an amount under this section. It's also a peculiar way to pull annuity supplements out of the rules required under 8467. They could have just said what they said for the CIA agent statutory scheme. They could have, Your Honor. But it's not as if Section 8467 says that a basic annuity can only be apportioned if expressly provided for in a court order. It says a payment. So the fact that Congress was tying, in a matter of time if I just finish this thought, the fact that Congress was tying the annuity supplement in Section 8421C to the basic annuity, rather than just tying it to Section 8467 itself, suggests that Congress wanted the treatment of the annuity supplement to be the same treatment as the basic annuity. And so when one is apportioned, the other is apportioned as well. And specifically, when the basic annuity is apportioned, the annuity supplement is. With your permission, I have a question for both sides, if I can. That is, was there any alleged history? I couldn't find anything of any import. About this specific question? Yeah. I couldn't find an answer to it in the legislative history either, Your Honor. It's a similar result. Yeah. Thank you. Both sides, thank you very much. The case is submitted.